Right. Our next case this morning is Hunt v. Montano, number 20-2042. Mr. Walls, you may proceed. Well, thank you very much, Your Honor and members of the panel. We are here today on the appeal taken for the denial of our motion to dismiss the 14th Amendment substantive due process claims set forth in the amended complaint filed by plaintiffs against five CYFD social workers. As the Court knows, this is a de novo review, but we have a significant amount of case authority, some very akin to the facts of this case and perhaps, if I might say, even a little more egregious in terms of the fact pattern and what was known or what was not known, where in fact... You've got to turn your mic back on, counsel. Your mic is off. Well, I will make up in short time since I lost a minute. Thank you. Well, we're here on the appeal of the denial of our motion to dismiss based on the 14th Amendment substantive due process claims for five CYFD social workers. As the Court knows... Mr. Walls, you challenged the sufficiency of the allegations in the complaint. Well, that's right. Isn't that a pure question of law? No, it's not because just like the allegations that were in the Hubbard case, which was decided by the Tenth Circuit by Judge Matheson and other cases that have come before the Court, there are always going to be factual allegations that will try to steer liability against the defendants. What we're saying, Judge Kelly, is looking at the factual allegations and the pleadings as they stand, even construing those allegations in the light most favorable to the plaintiffs as a matter of law, just as a matter of law, they cannot sustain a 14th Amendment substantive due process claim. It's just not there. And that information is found in the extensive amended complaint that Mr. Schultz did that consisted of 53 pages, 172 allegations. What they cannot and did not do in the lower court is to show how the conduct of any of the five individual defendants rose to the level where applying the applicable tests as set forth by this court, that the individually named defendants could be held liable as a matter of law. And very briefly, we just need to take a look at the situation in that you have to have, first of all, the state custody connection that occurred in May of 2017 when the three children were taken into state custody. Mr. Walls, before you dive into all of that, and I know you will, but before that, I'm interested in asking you about the clearly established law element of qualified immunity. In their opposition to the motion, your motion, for judgment on the pleadings, the plaintiffs argued that you failed to make an argument about that in your moving papers and then didn't respond to it in your reply. This is in the district court. So have you waived the clearly established law prong of qualified immunity? No, Your Honor, and as we're ahead of the pleadings, this was not perhaps our more asserted, and the case authority from the 10th Circuit is very clear that the burden shifts to plaintiffs to address both prongs of qualified immunity. The focus, frankly... Is that true even if you don't make any argument? We cited cases where qualified immunity was just invoked and the court, because it's a de novo review, can still go ahead and look and see if the law was clearly established. I think it would have been a clearer record, perhaps, even though I don't think the decision turns on qualified immunity, particularly the second prong, because the conduct doesn't rise in the first... Well, no, I understand that. We'll get to that in just a second, but so is it your position then that the district court should have addressed clearly because it wasn't waived. Qualified immunity was asserted. It does have two prongs. The second prong is what you're talking about, Judge Matheson, and the case authority is clear that the prongs must be addressed. Now, there was no attempt to misdirect the court, to try to hide the ball or anything else. I think the parties were really focused on the first prong as to whether or not there was a constitutional law that was being violated. Well, I understand that, but if we disagree with you on the first prong, then all you've got is the second one, so I need to know where you are on that. Well, it's our position, as set forth in our briefing, that you cannot, unless there's a formal waiver, perhaps, waive the second prong from adjudication or being adjudicated. Again, we come forward with responsibility in that it was not very well-defined at all in that initial briefing. If the court believes it needs to go back to have a fuller briefing or a complete briefing on the second prong as to whether or not the law was clearly established, and then come back at a later time, certainly willing to do that as well. Okay. I'm sorry I interrupted you on the first prong, but that answers my question. That's fine, Your Honor, and in fairness to the district court, it was not well-preserved or presented, but it was present, and when I say not well-preserved, it is preserved because of the test of qualified immunity. Once you assert it, it requires a two-prong analysis and the burden shifts to plaintiff's counsel. Do you agree that the state assumed control over these children and that the special relationship doctrine is applicable? Absolutely, Judge Kelley. All right. We took assumed control of the children, custody of the children by definition and case authority in May of 2017. Well, then you would agree, would you not, also that state actors have an affirmative duty to assume some responsibility for the safety and the general well-being of those children? Absolutely. And wasn't that alleged in the complaint? It was alleged, but not to the degree that... What do you have to put in the complaint? This is not summary judgment now. We're on a motion to dismiss. No, I understand that, Judge Kelley. But there's a lot of information, a lot of covered facts. What they would need to put in the complaint would be facts that would show a total abdication of their professional judgment. They would have to show that no professional judgment was ever exercised, and they can't do that because in their pleadings, even though they don't like what we did or like what the CYFD workers did, they did stuff. They examined the application of Dominguez-Romero. They ignored what the independent evaluator concluded? There was an 18-page evaluation by La Familia. They did a one-page addendum, and they said that Dominguez-Romero was fine for foster and respite care. That was totally the opposite of what the individual who initially evaluated the premises concluded. I think that might have been more crowned over. That's in the pleadings. We're talking about whether the pleadings suffice. Sure. But on Dominguez-Romero, Your Honor, by the way, there's nothing actually of any complaints that they did everything incorrect or wrong with the children other than let one of the children die. No, Your Honor, we don't condone the death of anybody, obviously, and it's a very sad and tragic situation for everybody, including the social workers. What happened was that Ms. Romero had Ms. Crownover, who is also a respite care provider, take care of the children for a few days, and unfortunately, she passed away, as the court just stated, on December 31, 2017. But Ms. Crownover was being monitored. It's in the pleadings. Her house had been checked. That's in the pleadings. There's a clear indication that the people you represent ignored everything that had come before. The place was a hole in the wall. Your Honor, once after the death— They never caught that. They never even considered it. Well, Your Honor, there's no evidence that Ms. Montano, in particular, or any of the others, saw anything wrong inside the Crownover house prior to the death, and it was just inspected. Well, but if they had inspected, if they would have found it, now it's alleged to be a complaint, in my opinion, sufficiently, on a motion to dismiss. Summary judgment may come out with a totally different result, but that's not where we are yet. Well, Your Honor, the conditions of the house that you just described, the deplorable, filthy, etc., similar to the conditions in the Hubbard case, were discovered after the passage of Ariza Barreras. The information that's set forth in the event of complaint, and that's why it doesn't stand as a matter of law, does not state that Ms. Montano, Ms. Griffin, Ms. Hill, Ms. Valdez, that they knew of these conditions prior to that. So the information that we have, that they had, that's set forth in their words, their facts, do not paint such a picture that it would rise to a 14th Amendment substantive due process violation. Sure, can they argue negligence? Well, yes. When we look at the reply brief, there's two or three pages of what for this, what for that, what for this, what for that. That's a negligence analysis solely. But if you put it on a constitutional analysis based just on the pleadings, Judge Kelly, it's not there. Counsel, why wouldn't the allegations in the complaint, and I emphasize it as Judge Kelly does, that we're at motion to dismiss, not motion for summary judgment. Why don't the allegations about lack of records of investigation permit an inference that there was no investigation? Well, as we know, all inferences have to be given to the plaintiffs pursuant to motion to dismiss. But according to the amended complaint, they do say that Ms. Montano did an investigation or looked at the house. Then they questioned a few things, whether she's incompetent or even perhaps making up the records. I don't know the way that some of the allegations are drafted, but they never say that other than conclusory remarks, which we know are not to be considered as evidence, that Ms. Montano didn't do anything. She did, at least per the amended complaint. And so that's why even at a motion to dismiss stage, Your Honor, that even giving them all to them, they do not state a plausible, and I use that word because it comes out of the case law, and Judge Riggs used that quite a bit as well in her memorandum opinion. They do not state a plausible theory of recovery pursuant to the 14th Amendment substantive due process clause. So there was a special relationship. There was an exercise of professional judgment. Judge Kelly, even though you might not have liked their exercise of judgment, but they acknowledged that. It's set forth in the amended complaint. And when you read all the allegations in full, there was no abdication of professional responsibility or that their actions, even if they did not do the best job and that we had a bad result, it also has to shock the conscience. And that's part of that 14th Amendment.  Uh, Your Honor, um, anytime, anytime a child's injured or, or has some fate occur that we don't want to see on anyone, uh, it always, uh, bothers all of us, uh, uh, significantly, but in all these reported decisions, including the Hubbard case, uh, we have which case Hubbard, uh, it was, uh, uh, issued by the, uh, your circuit, uh, judge Kelly, uh, in, uh, 2018. And, uh, uh, judge Matheson was the author of that opinion. But if you read it, there's far more, uh, social workers, far more checks and balances, far more, uh, what I would call, uh, inflammatory or egregious conduct. And despite that, uh, the motion to dismiss was granted. And that's the nearest analogy case I can give you. Okay. Thank you. Thank you. Thank you, judge. Thank you. Judge Matheson. Thank you, counsel. Uh, Mr. Schultz. Can barely see your head, Mr. Schultz. There you go. New camera, Your Honor. Excuse me. Now you're fuzzy. I understand, Your Honor. No, there you are now. I appreciate your indulgence. Andrew Schultz, may it please the court. I'm here on behalf of the plaintiff's appellees. In denying the motion for judgment on the pleadings, the district court properly found that the individual defendants were not entitled to qualified immunity. We believe this court should affirm Judge Riggs' ruling for two reasons. First, the constitutional rights at issue were clearly established at the time of the individual defendants' conduct. And second, based on that clearly established law, the plaintiff's extensive allegations in their complaint state a plausible claim that each of the individual defendants violated the plaintiff's constitutional rights. Judge Matheson, let me just address one issue that you raised, and that has to do with the question of potential waiver of the clearly established prong of qualified immunity. I think this is a gray area because we would agree that by moving for qualified immunity, the plaintiffs do have the burden to establish that, and the district court does have a responsibility to address it. But by the same token, Your Honor, you are correct that it's not enough simply to say qualified immunity and then never address that prong of what must be shown, particularly when it was pointed out in the response brief to the motion to dismiss. So therefore, we believe Judge Riggs was proper in chiding the defendants for failing to raise it. But in all candor, Your Honor, this court's decision in Cox versus Glantz, a 2015 decision, there was a discussion about whether the clearly established prong had been, in this court's word, forfeited in the district court. And the court's conclusion was, because it was de novo review, that this court retained jurisdiction to decide that issue, even when not expressly decided by the district court, and even when, again, in the court's words, that issue had been forfeited in the district court. So for that reason, Your Honor, we believe it's appropriate for this court to consider the clearly established prong. And there is no... Counsel, just to follow up on that, I didn't see you arguing waiver of the clearly established prong in your brief to this court. Is that correct? You're not pressing the waiver argument now. I think both of your statements are correct, Judge Matheson. We did raise it in response to the court's request that that we address the jurisdiction issue. We did raise the jurisdiction issue. But you also are correct. We are not standing by that. We would prefer for this court to go on and address the clearly established prong, because we believe it is so clear. Yeah. Isn't the problem with that, though, that the district court didn't address it, and it hasn't been extensively briefed? That is correct, Your Honor. But again, citing back to Cox v. Glantz, this court said that in for a question of clearly established law that is on de novo review, it is appropriate for the 10th Circuit to reach that issue and rule on that issue, even without a ruling on that by the district court. Well, we also said in a case called Kearns v. Bader that there we remanded the issue so that the district court could address it in the first instance. Why isn't that the right course here? Well, Your Honor, we would stand by the court's recent decision in Cox v. Glantz that it is appropriate for the court to consider. I understand, but we've got a case that went the other way, and that's what I'm asking. Well, Your Honor, this court retains discretion to go either way. All right. Thank you. I'm not disputing that. All right. On the clearly established prong, Your Honor, I think the most important place to start is with then-Judge Gorsuch's decision for this court in Browder v. City of Albuquerque in 2015. Judge Gorsuch wrote for the court, quote, Some things are so obviously unlawful they don't require detailed explanation, and thus it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt. And that's precisely what we have here. Here, as alleged in the amended complaint, at every stage of the foster care system, from licensing to placement to monitoring, at every stage, these individual defendants neglected the clear duty that Judge Kelly of children within the custody of the state of New Mexico. Let me just, on the licensing, well, and also on the placement issue, relative to Ms. Dominguez and Mr. Romero, how did the licensing of them and placing the children with them cause the children's harm? Isn't there a causation issue there? Actually, Your Honor, I don't believe there is at all. First of all, as a matter of law, this court is clear, as are almost every circuit court. I'd appoint the court to Martinez v. Carson, and I'd also cite, we cited Sims v. City of Madisonville from the Sixth, I'm sorry, the Fifth Circuit, which collects cases. This court has been clear that it is traditional tort but for causation that applies. And all this court needs to do is understand that but for causation is abundantly clear. Had Dominguez and Romero never been licensed as foster parents, these children couldn't have been placed there. If these children couldn't have been placed there, they never would have been crowned over. If they'd never been placed in crown over, Ariza would not have died, and her siblings would not have been injured. There is an unbroken chain of but for causation, Your Honor. No matter where the court starts, these dominoes line up, and these individual defendants are responsible for the placement of every single one of those dominoes. Also, another, maybe not somewhat related question, but when it comes to the conscience shocking element, does a court need to look at each individual defendant and make a separate conscience shocking determination as to each one? It does, Your Honor. What this court is required to do is view each individual defendant separately, but at the same time, look at their conduct as a whole. And I would want to highlight one point, going back to an issue that Judge Kelly raised several times during his questioning. This is a motion that was brought on a motion to dismiss, taking all of the allegations as true. And this court has been consistent in Armijo, in Currier, in Schwartz, in Matthews. The court has been clear that on the question of conscience shocking behavior, that is precisely the kind of inquiry that the court needs to look at all of the allegations as to each defendant, but understand that the context should be further developed in discovery. And therefore, even if that means a second motion at the summary judgment stage, that context needs to be developed through further discovery. And here, Your Honor, all of the allegations relating to each of the individual defendants state a plausible claim for relief. And we believe that further discovery will place all of that conduct in context and allow this case to move forward. So your question was exactly right, Your Honor. And it also highlights the procedural posture of this case. And here, the allegations are more than sufficient, looking at each of the individual defendants at every single stage of the foster care system, that these individual defendants not only failed to exercise professional judgment, but did so in a manner that was conscience shocking. Take a look at starting with the licensure of the Dominguez-Romero household. These were people who clearly said they only wanted to provide respite care. Excuse me. They never wanted to be full-time foster care workers. These social workers knew it. They put it in that one-page addendum. They expressly noted these folks only want to provide respite care. And yet, what did these social workers do? They put three children, two of whom should have been categorized as special needs children because they had been exposed to serious drugs in utero. They placed them with foster parents who had no experience and no training to care for these kinds of children. With regard to Crownover and the licensure of Crownover. Counsel, do you think, though, that that's enough for imminent danger? Absolutely, Your Honor. The defendant's response is, well, there's nothing to show that just because you're licensed only to give respite care, that makes it inherently dangerous for you to provide full-time care. The only way for this court to reach that conclusion is to make an inference in favor of the defendants that somehow respite care and full-time care are equivalent, that somehow when the state chose to provide only a respite care license for these individuals, that they were assuming that they could also give full-time care. There are no facts to support that, and in fact, the allegations are exactly to the contrary. Also, Your Honor, I point the court to this court's language in Matthews. Matthews made the the court made the comment that even if some of these individual facts in and of themselves don't appear to be conscious, conscience shocking, taken together and placed in the context that could be developed on discovery, they state a plausible claim for relief and should be allowed to go forward. And the same is true, for example, Your Honor, of the licensure of the Crown Overhouse. This is a woman with an extensive criminal history, with severe financial constraints, a woman who has a record with CYFD of substantiated allegations of physical abuse against her own granddaughter. She used a broomstick to hit her granddaughter because she wouldn't get out of bed, and yet she was licensed to be a foster parent. And then, even though they knew this was a woman who had a home that had no debt, there is nothing to show that any foster care worker ever stepped foot inside that house and ever even followed up with Mrs. Crownover to ask the basic question, did you ever get the bedding you promised? And we know the answer is she did not. Why? Because Ariza was found strapped to a car seat because there was no bed to place her in. And she was again, also moving on to the plate, to the monitor. There is no record that any of these defendants ever stepped foot inside that house. Judge Kelly, you asked the exact right question. How could it be that within 24 hours after Ariza died, when CYFD came to investigate, they found a house that was almost too disgusting to describe, with human feces, with odor, odor so strong that the police officers couldn't stay inside the house? How could it be that these foster care or these social workers never discovered that? Including, by the way, individual defendant Griffin, who according to the notes that she added, nearly two weeks after Ariza died, said that she had been at the house the beginning of December and she had no safety concerns. Similarly, we know that on November 30th, there was an incident. That's the way it's described in the CYFD records. There was some incident involving but an incident that was so severe that both Montano and Griffin decided that it required immediate corrective action. Defendant Griffin wrote in her notes, this had to be taken ASAP, and yet they took no action to make sure she was not continuing to provide respite care. This also goes to the fact that what we know is that, and this goes to your but-for-causation point, Judge Matheson, we know- You're out of time. If you'd just like to wrap things up, please. Yes, Your Honor, and I apologize. Your Honor, the allegations throughout the complaint are more than sufficient to state a plausible claim. Judge Riggs was exactly right. She applied the right standard and she looked at each individual defendant separately. We urge this court to affirm the district court's ruling. Thank you. Thank you to both counsel. The case will be submitted. Counsel are excused.